# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOSHUA TINSLEY,

     Plaintiff,

v.                                                                    No. 20-cv-821-WJ-KRS

AMTRAK, JARRELL PERRY,
SETH CHAVEZ, FU GRADY,

     Defendants.

## **MEMORANDUM OPINION AND ORDER OF DISMISSAL**

THIS MATTER is before the Court on Plaintiff Joshua Tinsley's Amended Civil Complaint (Docs. 14, 15). Plaintiff is a federal prisoner. He appears *pro se* and *in forma pauperis*. He claims, *inter alia*, that Defendants violated his rights guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Having reviewed the Complaint and the relevant law pursuant to the screening requirement of 28 U.S.C. § 1915A, the Court will dismiss the Complaint for failure to state a claim upon which relief can be granted. Plaintiff will be granted an opportunity to amend.

I.    Facts.

For the limited purpose of this Memorandum Opinion and Order, the Court assumes, but does not decide, that the factual allegations in the Complaint are true.

The Complaint is based, primarily, on the circumstances surrounding Plaintiff's August 2018 arrest by Defendant Jarrell Perry ("Agent Perry"), a special agent of the Drug Enforcement Administration (DEA). (Doc. 15). Defendants Grady and Chavez are DEA task force officers and were involved in Plaintiff's arrest and post-arrest interrogation. (Id.). As the Complaint references

the criminal proceedings against him, which are relevant to the Court's analysis, the Court takes judicial notice of its docket in related criminal case, *USA v. Tinsley*, 18-cr-2634-WJ.[1]

In May 2018, Plaintiff and two companions were traveling through Albuquerque on a Greyhound bus. *Tinsley*, 18-cr-2634-WJ, Doc. 1 at 2. Having arrested Plaintiff's traveling companions for possession of illegal narcotics, Agent Perry asked Plaintiff for permission to search his backpack and Plaintiff refused. *Id.* at 2-3. Agent Perry allowed Plaintiff to leave the bus stop, but retained Plaintiff's backpack for further investigation, advising Plaintiff that if a narcotics canine did not alert to the backpack for illegal narcotics, it would be sent to him via overnight carrier at an address that he provided. *Id.* After a narcotics canine alerted to the backpack, Agent Perry got a warrant to search it and discovered a quantity of methamphetamine consistent with distribution rather than personal use. *Id.* Doc. 1 at 3, Doc. 71 at 4.

A little over two months later, in August 2018, Plaintiff was travelling through Albuquerque on Amtrak when he again encountered Agent Perry. (Doc. 15 at 1). Plaintiff alleges that when he got off the train to smoke a cigarette, Agent Perry approached him and asked if he remembered him from their encounter in May, which of course Plaintiff did. (Id.). Agent Perry then asked Plaintiff if he could search his luggage. (Doc. 1 at 2). Plaintiff initially refused but allegedly felt "coerced" to consent to a canine sniff of his bags. (Id.). When the dog (handled by officer Grady) alerted to Plaintiff's bags, Plaintiff—allegedly under duress—consented to a search of his luggage by Agent Perry. (Id.). The search did not reveal anything illegal. (Id.). Ultimately, Agent Perry arrested Plaintiff, allegedly advising him that "his supervisor said that there was . . .

---

[1] The Court takes judicial notice of the docket in this case and in related state and federal cases. *See St. Louis Baptist Temple, Inc., v. Fed. Deposit Ins. Corp.*, 605 F. 2d 1169, 1172 (10th Cir. 1979) (The Court may take notice of "proceedings in other courts, both within and without the federal judicial system, if [they] have a direct relation to matters at issue.").

a Grand Jury scheduled for him the next week for their encounter in May." (Id. at 3). Plaintiff alleges that this was a lie; no grand jury had been scheduled. (Id.).

Plaintiff was taken to the DEA office, strip searched by Agent perry, and processed by officers Chavez and Grady. (Id. at 4).  In an interrogation room, officer Chavez allegedly told Plaintiff that if he wanted to make a phone call, he had to give the officers the passcode to his cellphone, which plaintiff characterizes as an attempt to trick him into self-incrimination. (Id.). This occurred before Plaintiff had a lawyer, but after he had requested one. (Id.). Plaintiff alleges that in the criminal proceedings that followed, he—acting through is attorney—sought recordings from his pre and post-arrest interactions with the DEA Defendants, but all of the recordings had "somehow[] disappeared[.]" (Id. at 4). This, Plaintiff alleges, "speaks volumes to the fact that [his] rights were violated [in] multiple ways on that day, and the officers involved want it to be 'swept under the rug.'" (Id.).

In August 2019, Plaintiff entered into a plea agreement, whereby he pleaded guilty to possession with intent to distribute methamphetamine. *Tinsley*, 18-cr-2634-WJ, Doc. 71. The charges in the criminal case and the plea agreement stem from the events of May 2018. *Id.* This civil Complaint pertains to the events of August 2018, which generated no additional charges.

In the Complaint, Plaintiff claims that he was arrested under false pretenses, any consent that he gave was coerced and therefore invalid, he was deprived of due process, and his right to privacy was violated by Amtrak's disclosure of his travel plans. He invokes the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.  (Doc. 15 at 5). Additionally, Plaintiff seeks to sue Amtrak based on an alleged statutory violation. (Id.).

II.    <u>Discussion</u>.

A.    <u>Standard of Review</u>.

Where, as here, a prisoner civil rights action is removed from state court, the Court screens the claims under 28 U.S.C. § 1915A.  *See Carr v. Zwally*, 760 F. App'x 550, 553-54 (10th Cir. 2019) (§ 1915A provides for *sua sponte* review of inmate complaints against government officials, even if they are removed from state court).  Under § 1915A, the Court must dismiss a prisoner civil action *sua sponte* "if the complaint ... is frivolous, malicious, or fails to state a claim on which relief may be granted." 28 U.S.C. § 1915A(b).  The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because he is *pro se*, the Court construes Plaintiff's pleadings "liberally" and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (discussing the Court's construction of *pro se* pleadings). This means that "if the court can reasonably read the pleadings to state valid claim on which [he] could prevail, it should do so despite [his] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction or his unfamiliarity with pleading requirements." *Id.*  It does not mean, however, that the court should "assume the role of advocate for the pro se litigant." *Id.*

B.    <u>Plaintiff's Constitutional Claims</u>.

Claims against federal agents for the alleged deprivation of constitutional rights are analyzed under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). In *Bivens*, the

Supreme Court recognized a cause of action arising under the Constitution itself, allowing a damages remedy to compensate persons injured by federal officers who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. *Id.* at 397. A so-called "implied cause of action" for violations of the Constitution was later recognized under the Fifth Amendment in a gender discrimination case against a United States Congressman and under the Eighth Amendment against federal jailers for failure to provide adequate medical treatment. *Ziglar v. Abbasi*, 137 S. Ct 1843, 1854-55 (2017). In the decades that followed, however, the Supreme Court declined to extend *Bivens* to any new context or new category of defendants and has expressed that doing so is a "disfavored judicial activity." *Id.* at 1857.

    1.  <u>Plaintiff's *Bivens* Claims Against Amtrak.</u>

It is established that "for the purpose of individual rights guaranteed against the Government by the Constitution[,]" "Amtrak[] . . . is an agency or instrumentality of the United States[.]" *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 394 (1995). Thus, to the extent Plaintiff seeks to hold Amtrak liable for violating his federal constitutional rights, the claims arise under *Bivens*. Nevertheless, *Bivens* claims are not available against federal agencies. *Smith v. U.S.*, 561 F.3d 1090, 1099 (10th Cir. 2009) *(Bivens* claims are available against law enforcement officers in their individual capacities, but not against "the United States, federal officials in their official capacities, or federal agencies[.]" (Citation omitted)). Instead, "*Bivens* . . . is concerned solely with deterring individual officers' unconstitutional acts." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001). Accordingly, to the extent Plaintiff seeks to sue Amtrak for violating his constitutional rights to privacy or otherwise, such claims must be dismissed.

    2.  <u>Plaintiff's *Bivens* Claims Against the DEA Defendants.</u>

Plaintiff's claims against Agent Perry and officers Chavez and Grady for constitutional

violations are likewise governed by *Bivens*. To make out a viable *Bivens* claim a Plaintiff must allege "that each defendant—whether by direct participation or by virtue of a policy over which he possessed supervisory responsibility—caused a violation of plaintiffs' clearly established constitutional rights, and that each defendant acted with the constitutionally requisite state of mind." *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013). The Court discerns the following claims against the respective individual Defendants, each arising from the August 2018 encounter.

      3.   <u>Fourth Amendment Claims Against Agent Perry and Officer Grady</u>

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Generally, the Fourth Amendment "requires that law enforcement officers obtain a warrant, based on probable cause, before conducting a search." *U.S. v. Anchondo*, 156 F.3d 1043, 1045 (10th Cir. 1998). Plaintiff alleges that Agent Perry and officer Grady violated his Fourth Amendment rights by conducting a warrantless search of his luggage, which unfolded in two stages: first, as a product of Agent Perry's coercion, Plaintiff consented to a "K-9 sniff" of his luggage; and second, under duress, and after the dog alerted to the presence of narcotics in his bag, Plaintiff consented to Agent Perry's search of the luggage.

Plaintiff correctly notes the principle that consent which is found to be the product of duress or coercion is invalid as an exception to the warrant requirement. *See e.g., Eidson v. Owens*, 515 F.3d 1139, 1146 (10th Cir. 2008). However, the first part of his claim is premised on the incorrect assumption that he was subject to a "search" when the narcotics-detection dog sniffed his luggage. On the contrary, a dog sniff is not a search within the meaning of the Fourth Amendment. *U.S. v. Place*, 462 U.S. 696, 707 (1983) ("A 'canine sniff' by a well-trained narcotics detection dog" does "not constitute a 'search' within the meaning of the Fourth Amendment."), *U.S. v. Scales*, 903 F.2d

765, 768 (10th Cir. 1990) ("In *Place*, the Supreme Court held that subjecting luggage to a 'canine sniff' does not constitute a search within the meaning of the Fourth Amendment because both the manner of obtaining information and the information actually obtained are so limited."); *U.S. Morales-Zamora*, 914 F.2d 200, 203 (10th Cir. 1990) (colleting cases). Arising from this first "search" the allegations in the Complaint do not support a claim against Agent Perry or officer Grady—the dog handler—for a violation of Plaintiff's Fourth Amendment rights.

That the dog alerted to the presence of narcotics in Plaintiff's luggage gave Agent Perry probable cause to arrest Plaintiff. *Romo v. Champion*, 46 F.3d 1013, 1020 (10th Cir. 1995) ("This court has held in several cases that a dog alert without more creates probable cause for searches and seizures." (Alterations omitted)); *U.S. v. Ludwig*, 10 F.3d 1523, 1527 (10th Cir. 1993) (same). This, combined with the extant probable cause to arrest Plaintiff based on events of May 2018— particularly Agent Perry's discovery of a distribution quantity of methamphetamine in Plaintiff's backpack, justified his arrest of Plaintiff and the search of his luggage, which would necessarily have had to stay with Plaintiff (as opposed to being left on the train) after he was arrested. *U.S. v. Holley*, 156 F.3d 1245, *2-3 (1998) (Table) ("[D]etectives had probable cause to detain [a person] and search her and her luggage" after dog alerted to the presence of narcotics in the luggage); *see generally U.S. v. Sanchez*, 555 F.3d 910, 920 (10th Cir. 2009) ("[A] search incident to arrest can . . . precede the arrest if probable cause for the arrest preceded the search (rather than being justified by the fruits of the search); *Anchondo*, 156 F.3d at 1045 ("A warrantless search preceding an arrest is a legitimate "search incident to arrest" as long as (1) a legitimate basis for the arrest existed before the search, and (2) the arrest followed shortly after the search."). Based on the allegations in the Complaint, this second search—even assuming that Plaintiff's consent was coerced—does not support a *Bivens* claim.

To the extent Plaintiff seeks to state a claim for false arrest against Agent Perry, such claim must be dismissed. A person who "has been imprisoned without legal process . . . has a claim under the Fourth Amendment analogous to a tort claim for false arrest or false imprisonment." *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). However, a law enforcement officer "may arrest a person without a warrant if he has probable cause to believe that person committed a crime." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Id.* Plaintiff does not allege, nor considering the facts and circumstances in his related criminal case could he reasonably allege, that Agent Perry lacked probable cause to arrest him based on the events of May 2018.

4.   <u>Fifth Amendment Claims Against Officers Grady and Chavez</u>.

The Self-Incrimination Clause of the Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." Implicit in that guarantee, is the right to counsel during a custodial interrogation. *Eidson*, 515 F.3d at 1148. The Fifth Amendment also guarantees the right to due process of law before being deprived of "life, liberty or property." Plaintiff alleges that during a post-arrest interrogation, officers Chavez and Grady violated his Fifth Amendment rights by, *inter alia*, trying to "trick him into giving up access his cell phone" after he had requested, but before he had an attorney. Plaintiff also claims generally that his Fifth Amendment due process rights were violated. These claims are barred by the doctrine established in *Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck*, the Supreme Court held:

 to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or

8

> sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus[.]

*Id.* at 486-87. The "*Heck* doctrine" applies to *Bivens* actions. *Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir.1996). Were Plaintiff to prevail on his Fifth Amendment claims, the validity of his conviction would be called into question. Accordingly, this claim is not cognizable under *Bivens* and must be dismissed. *See Ashfield v. Cacciatore*, 139 F. App'x 934, 934-35 (10th Cir. 2005) (affirming the dismissal of a § 1983 Fifth Amendment claim as barred by *Heck*). This conclusion applies, as well, to Plaintiff's generalized claim that his constitutional rights were violated in "multiple ways" on the day of his interrogation, and to any claim pertaining to the DEA Defendants' alleged failure, during the criminal proceedings, to produce recordings requested by his attorneys. A *Bivens* action cannot be used as a vehicle to collaterally attack the validity of a criminal conviction.

5.   Fourteenth Amendment Claims.

Though it is not clear what claims Plaintiff would seek to pursue under the Fourteenth Amendment, his reliance on its provisions is misplaced in the context of this case. The Fourteenth Amendment is "applicable only to actions by state and local entities, not by the federal government." *Dry v. U.S.*, 235 F.3d 1249, 1255 (10th Cir. 2000). Any claim against the Defendants arising under the Fourteenth Amendment must therefore be dismissed.

C.   Statutory Claim Against Amtrak.

Plaintiff seeks to state a statutory violation against Amtrak for violating its purported duty to withhold its passenger name records (his name particularly) from Agent Perry. Plaintiff frames this claim as a violation of the following statutes.

49 U.S.C. § 24301 governs Amtrak's status and the applicable laws governing it. 49 U.S.C. § 24301(e), which Plaintiff invokes in his Complaint, provides:

> Application of certain additional laws.--Section 552 of title 5, this part, and, to the extent consistent with this part, the District of Columbia Business Corporation Act (D.C. Code § 29-301 et seq.) apply to Amtrak. Section 552 of title 5, United States Code, applies to Amtrak for any fiscal year in which Amtrak receives a Federal subsidy.

5 U.S.C. § 552, in turn, governs the administrative procedure applicable to an agency's (in this instance Amtrak's) duty to make certain information available to the public by publishing it in the Federal Register. Plaintiff invokes three subsections of § 552:

> (8)(A) An agency shall--
> (i) withhold information under this section only if--
> (I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or
> (II) disclosure is prohibited by law; and
>
> (8)(B) Nothing in this paragraph requires disclosure of information that is otherwise prohibited from disclosure by law, or otherwise exempted from disclosure[.]
>> (b) This section does not apply to matters that are--
>> (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to constitute an unwarranted invasion of personal privacy, . . .
>> . . . .
>> (c)(1) Whenever a request is made which involves access to records described in subsection (b)(7)(A) and—
>> (A) the investigation or proceeding involves a possible violation of criminal law; and
>> (B) there is reason to believe that (i) the subject of the investigation or proceeding is not aware of its pendency, and (ii) disclosure of the existence of the records could reasonably be expected to interfere with enforcement proceedings[.]

Plaintiff's claim is based on a flawed interpretation of the identified provisions of the Administrative Procedures Act. Those provisions govern Amtrak's administrative obligations to publish certain information in the Federal Register. The subsections invoked by Plaintiff exempt Amtrak from the duty to publish information that falls into the stated categories. They do not create

a private right of action for the alleged wrongful disclosure of passenger lists to law enforcement officers effecting law enforcement objectives. This claim is not viable and must be dismissed.

D. Plaintiff May File an Amended Complaint.

Generally, *pro se* plaintiffs should be given a reasonable opportunity to remedy defects in their pleadings. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). Accordingly, Plaintiff shall be granted a thirty-day deadline within which to file an amended complaint. If Plaintiff declines to timely amend, the Court may dismiss the case with prejudice.

IT IS ORDERED:

(1)      Each of the claims set forth in the Complaint (Docs. 14, 15) are DISMISSED without prejudice.

(2)      Plaintiff is granted leave to file an amended complaint within thirty days of the entry of this Memorandum Opinion and Order. Failure to do so may result in dismissal of this case without further notice.

(3)      The Clerk's office should mail Plaintiff a blank Prisoner Civil Rights Complaint form.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE